First case on the docket today is, and I may mispronounce this, I hope not, Niederhofer v. Illinois Central Railroad, No. 5-10-0392, and Mr. Gavin. Good morning, sir. You may proceed. At police court, Mr. Rice, gentlemen, my name is William Gavin. I represent the plaintiff, Larry Niederhofer, in this FVLA action where the sole issue before you this morning is whether the court erred in granting a motion for summary judgment on the issue of causation and thereby taking away Mr. Niederhofer's right to a jury trial. The issue of causation, the standard of causation in an FVLA case has been crystal clear for more than 50 years since the decision of Rogers v. Missouri Pacific Railroad. And this decision, this opinion has been quoted many, many times, and in fact, it's impossible to get through an FVLA case with encountering this principle that if there's any evidence that the railroad's negligence played any part, even the slightest part, in producing the complaint of injury, a submissible case to the jury is established. That, as I said, in principle, has been established for more than 50 years. This is probably not a fair question to ask you because it's not cited in your brief, but we're probably going to get some guidance on that pretty soon, aren't we? There's a case pending before the U.S. Supreme Court that was argued 10 days ago. That's correct, sir. Something like that, CSX v. McBride. Yes, sir. And is that likely to give us some guidance on this issue? Well, the only thing I can say, sir, is the Seventh Circuit in the McBride case analyzed the whole history of that principle and held, clearly held, that the principle is still intact and it is the law, the clearly stated law of the Supreme Court of the United States. As to what the Supreme Court will ultimately say about that, I'm not sure. That's a circuit called Rogers. Yes, sir. I certainly don't know myself. But I agree that is the issue before the Supreme Court of the United States to revisit this well-established principle. I don't think, though, ultimately it makes much difference because even if the Supreme Court of the United States was to change established law and say, no, we're going to be guided by the concept of proximate cause in FBLA cases from here on out, the facts of this case are still such that the proximate cause of the negligence of the railroad was a cause of the plaintiff's injury. So whether we use the looser standard or the stricter standard, the outcome should be the same, and that is a reversal of the trial court's summary judgment. The facts of Rogers, though, are also instructive in this case. It's not often that they are, and usually we're citing them for the legal principle. But if the court recalls, in Rogers, a trackman was instructed to stand back while a train was passing. This train fanned some flames along the track. The trackman recoiled from the flames, stepped on a culvert, and slipped and fell. And the reason they're instructive in this case is, and of course the Rogers court held that the Missouri Supreme Court was wrong when it took away the jury's verdict in favor of Rogers and that a submissible case had been established. The reason they're instructive in this case is because in this case, the plaintiff, Mr. Niederhofer, was reacting to a perceived danger and risk to him and the company's property as a result of the truck sliding down the icy slope in the yards and coming into contact with the cut of cars. And that's established not only in the affidavit that was submitted to the court by Mr. Niederhofer, but it's also established in his testimony. So in both cases, the plaintiff was reacting to a perceived threat to himself. In fact, the trial court in its remarks stated at the hearing of the motion for summary judgment, now that it's true that he, the plaintiff, wouldn't have stepped out at that particular point in time or at that particular geographical location, but for the fact that the truck had slid into the side of the train with a greater or lesser amount of force. The railroad would try to disconnect this chain of events at that point where the truck came to a stop and have the court accept that we're now moving into a different set of events when the evidence, or certainly there's enough evidence for a jury to have been given the issue whether this was a complete chain of events. In our brief, we cited the case of Laken, L-A-K-I-N, versus Conrail. In that case, there was a crossing accident. A locomotive hit a truck at a crossing. The locomotive came to a stop, and the engineer, perceiving risk to himself, went to get off of the locomotive. And he wasn't injured in the crossing accident. He was injured when he tripped on a cable lying on the floor of the locomotive. In that case, like in this case, the railroad raised the question of causation. Did the collision cause the injury? And the court held, and Laken clearly held, that there was a question of fact of causation for the violation of having this cable on the floor of the locomotive that was for the jury and denied the motion for serving judgment. In that case, the specific allegation of negligence, though, was the cable that he tripped over. Well, first of all, I misstated what the court ruled, so I do want to correct that. But to answer your question, it was more complex than that. There were two counts. There was a negligence count, and there was a Locomotive Boiler Inspection Act count. The jury filed for the railroad on negligence. The court directed a verdict on Locomotive Boiler Inspection Act, and that's where I misstated the case. And the appellate court reversed the trial court, holding that the jury should have received the Locomotive Boiler Inspection Act count because it was an alleged violation. And the issue of causation as part of that ruling also was commented on by the court that the jury should have received that as well. So that's the full procedural scope of that case. The railroad's reliance on McDonald v. Metra in this case really is more supportive of the plaintiff's case than the railroad's position. In Metra, the court held that the railroad had a duty to make its railroad yards safe from the accumulation of ice and snow. So that establishes the duty of the railroad to protect Mr. Niederhofer from this icy condition. What the railroad relies so much on, however, is McDonald's allegation that the use of a forklift in the snow was a cause of McDonald's injury. But the facts are clear in that case. The opinion is clear in that case, that McDonald was injured after the forklift was extricated from its position of being stuck in the snow. That's not the case here. Niederhofer was injured while trying to extricate the RT truck from its position against the railroad cars. There's a distinct factual difference as to why those cases are different. And in fact, Mr. Niederhofer submitted to the court, the circuit court, the railroad's rules that required him to immediately report this to a supervisor, to be responsible for his own safety, and to look out for conditions that threatened his safety, which is exactly what he was doing. His affidavit states that he was exiting the truck because he could not see the gas tank on the truck. He did not know whether it was punctured. He did not know whether there was other damage to the truck. He did not know whether this line of cars that they were abutted up against would be moved, even though it was a blue flag. That's a term used on railroads. The affidavit shows that cars are sometimes moved within the boundaries of blue flags. It could have caused him or the truck further injury. Let me ask a question about that. Your opponent points out that there are discrepancies between the plaintiff's deposition and the affidavit. In other words, some of the things you just mentioned, I guess, were added in the affidavit that he didn't testify about in his deposition. What's your response to that? Two things, Your Honor. An affidavit that adds evidence that's not addressed in a deposition does not mean that there's a contradiction to a deposition testimony. It just means there's additional evidence. Let me ask about that. Is your position there that he wasn't asked about these things in the deposition? That's right. In the footnote in the defendant's brief where it makes this assertion that the affidavit contradicts the testimony, the defendant does not provide you with what portions of the testimony the defendant claims the affidavit contradicts. The brief that raises this topic, and I will say that topic was not raised in the circuit court. In other words, the defendant did not argue in the circuit court that the affidavit should not be considered because it contradicted the testimony of the deposition. But in any event, the footnote in the brief that makes that assertion does not cite to the record this alleged contradiction. Okay. So just so I understand, so I guess the deposition he's asked, why did you get out of the truck? In essence, he says, I got out because I was making a phone call or whatever. And in his affidavit, he adds, you know, I was also concerned about whether the fuel tank was punctured, those kind of things. Yes, sir. All right. For example, he was also not asked in his deposition about the rules that required him to immediately report. But that was added in the affidavit. Again, that's not a contradiction. That's just additional evidence. And then the last point I'd like to make to the Court is that Section 445 of the Restatement of the Court Second is directly on point. These are the sections of the Restatement that address legal cause, intervening cause, those topics. And Section 445 says if the actors, that would be the railroads, negligent conduct, threatens harm to another's, including Mr. Dieterhofer and his driver, another's person, land, or channels, the normal efforts of the other or a third person to avert the threat of harm are not a superseding cause of harm resulting from such efforts. Maybe stated in a different way, the fact that Mr. Dieterhofer was reacting to the collision and the perceived need to find out what the situation was and the need to react to perceived harm is not an interruption of the chain of events, and especially when we apply in whole or in part in the slightest degree. So for those reasons, the Court erred when it granted summary judgment in favor of the defendant. Thank you. Thank you, Mr. Gavin. Mr. Reitz. Your Honor, Mr. Gavin, may it please the Court, my name is Curt Reitz and I represent Illinois Central Railroad Company in this appeal. This case involves, and the Court, I know, has read the paper. This case involves two separate and distinct occurrences. We have a minor truck incident. Let's talk about that for a second. We have a minor truck incident where a repair truck working on rail cars on a rail track pulls forward to let another truck pass by. It then backs up at an extremely slow rate of speed and, according to the plaintiff's testimony, is actually stopped when it slides slowly and comes to rest against a set of rail cars. No one is injured. No one is hurt. It's undisputed. There's no question of fact about that. Then a second incident occurs later where a plaintiff gets on the cell phone. He's on the cell phone because he thinks he's going to get in trouble because they may have vented this truck, which, in fact, they didn't vent the truck. But he's on the cell phone, and as he's on the cell phone, he decides to get out of the truck while talking on his cell phone and not looking where he's going. And in some form or fashion, he doesn't know. He's only guessing. He injures his knee. The plaintiff is the master of his complaint. And I emphasize that in this case. The plaintiff is the master of his complaint. His own counsel drafted the complaint. Any allegation, any theory of recovery that had a good faith basis in fact could have been put in that complaint. My job as the defense lawyer is to defend the complaint. Here is what Mr. Dieterhofer says in his complaint. As the force said, time and place, the plaintiff was a passenger in one of Illinois Central's commercial trucks when the truck being driven by a fellow employee collided with the side of a rail car. And as the trial court noted, the specific acts of negligence plaintiff alleged in the ABC part of the complaint that we're all familiar with relate to failing to remove snow, failing to put down salt or substances, failing to equip the vehicle with snow tires. They're all directed at the collision, as the trial court noted. The complaint contains no mention of Mr. Dieterhofer being, and I wrote these down during the argument, reacting to a perceived danger. It contains no mention, and as Lakin, the Lakin case cited, of a perceived risk. No mention at all. In fact, I would point out in plaintiff's initial brief, the following terms are used. Danger, perils, precarious, imminent peril. In the reply brief, which is six pages long and cites almost no case law, the use of this language becomes more frequent and more animated. The terms are used, precarious and potentially dangerous situation. Urgency, precarious position, threatened harm, avert the threatened harm, precariously, and peril or danger. That's not what happened here. Everybody knows it, and there's no question of fact in the record, and there's no allegation in the complaint. Your Honor, none of those terms are used in the complaint anywhere that would have suggested that that was a theory of recovery. And what's more, from a plain reading of the depositions, there's two of them with the plaintiff, because the plaintiff produced photographs of the accident after the first deposition. What's more, we know from a plain reading of the deposition and from the word search that now exists for the depositions, that as you would expect, not one of those terms or anything even coming close to it appears anywhere in the plaintiff's depositions. So with respect to the court and my opposing counsel, this perceived theory, this perceived danger that the plaintiff has to get to to get on the rod, because the rod is running away from smoke and flames, is not a theory of recovery that was ever asserted in the complaint. It's not one that was ever testified to in the deposition, and it is something that was come up with after the summary judgment was filed as a way to get around the fact that we're entitled to summary judgment. Simply put, there are undisputed facts in the record to bear this out. The plaintiff never alleged in his complaint or testified in his deposition he was exiting his truck to avoid any danger or hazard or any perceived threat. It just didn't happen, and it's not planned. In fact, we know the plaintiff is so cavalier about the whole thing after the accident, he testifies under oath, it's in the brief, that everybody's fine, that he gets on the cell phone and then gets out of the truck as he's talking on the cell phone. Does he have to be getting out of the truck as a result of a perceived danger for there to be a causation issue? That is the Rogers case. That's how Rogers explained it. I understand that that's right, but I mean, you know, what if he had opened the door and stepped out and fell over a 100-foot cliff? Or jumped out. Or lightning struck. And he'd have been safe if he'd stayed in the truck. I mean, still. Your Honor, that is the whole point, as the Court knows, of the cases that we've cited, and that is these are two separate and completely independent incidents. If that is the law, that's this term, the cases that we cited use, this Latin term, post hoc ergo proper hoc. Okay, tell us what that means. I'll try. What it means is because one event happens and the other follows it, the first event doesn't have anything to do with the cause. It doesn't mean that it caused it at all. And in plain English, I was thinking about this last night, the classic example of this is I wash my car, therefore it rains. I wash my car, therefore it rains. We all know it's not connected. Everybody says it all the time. That, Your Honors, is post hoc ergo proper hoc. I wash my car, therefore it rains. And in this case, translated into this case, Mr. Niedhoffer is in the most minor offenders and thank God nobody got hurt. And now he makes a phone call and gets out talking on his cell phone, not looking where he's going. And injures his knee. And somehow those two are connected. They're not connected. They are not connected at all. But, I mean, your position has to be as a matter of law they're not connected. Of course. I mean, of course, we're here on summary judgment. Usually causation is something we let the jury decide. Because this is not what we're talking about. That's a good, excellent question. And it discusses why. It brings up why Rogers and now McBride have very little to do with the outcome of this case. And that's because the case which we cited, the McDonald case, specifically says there's a forklift. And you're using a forklift in heavy snow. The claim is you should have a forklift out in heavy snow. It gets stuck. They get it unstuck. And immediately after he gets unstuck, in fact, his hand is still on the forklift, he steps on a curb that's covered up by snow. And the court there says it is clearly improper use of the forklift is irrelevant. There is no evidence that the improper use of the forklift caused McDonald to fall or made him unstable. That's exactly what happened here. Plaintiff had a radio, dislodged the forklift from the snow when he was injured. It says, and this is to address your question, I apologize for taking so long to get there, this is not a legally recognized concept of causation. It's not a little bit of causation. It's not a scintilla. It's zero. It is not a legally recognized concept of causation. I just went through this in the Seventh Circuit on a series of cases we had in Central Illinois over medical causation. And a bribe case came up. And when the doctors were stricken based on dollar, how much medical causation did they have? Did they have a little bit? No, they had zero. And therefore, we're entitled to summary judgment. And that's the exact same thing here. How much causation testimony does he have at this point? He has asserted what is a non-legally recognized concept of causation. As the court says here, it is a fallacy called post hoc or go prop or hoc, following this therefore because of this. Why does he do this? Because the plaintiff is under oath when he said he got out of the truck, I'm talking on a cell phone, and I'm not looking where I'm going, and I don't know what happened. So now we're left with trying to back this thing up to the priors. And so we back it up to where it may be slow moving, may be stopped. Truck slides very slow, slowly, sideways into a cut of cars. And let's talk about that because we don't have any negligence on the second incident. And this is exactly what the court found. The court found that the removal of the snow, the salting of the snow, while it may have resulted in this minor fender bender, reading the complaint as broadly as possible, giving the plaintiff every break, it had nothing to do, this is the court, his testimony's deposition does not bear out that the ice and snow he stepped on had anything to do with his own accident. So the court said this, they say this in the other papers, it's creative, it's ingenious. It's a creative and ingenious argument for a plaintiff's counsel to say, well, you're responsible. There's an accident and you are the insurer for anything that happens thereafter. But that's not the law. That is not the law at all. In fact, I mean, the McDonald case points it out so well. This is not even about causation. It's a separate event. And recognizing this, recognizing this, what this appeal has devolved into now is a claim that Mr. Mieterhofer somehow exited the vehicle in fear for his life. Now, we know that's not true. But more importantly, it's not pled in the complaint. So the claim has now devolved into this claim he somehow exited the vehicle in fear for his life, something that's not alleged in the complaint, which I would submit puts an end to this appeal right at that point. But something that we also know isn't true from the sworn deposition testimony, which I would submit should make you feel better about draining it based upon the complaint, and something that is first raised in an affidavit that is filed after the summary judgment motion is filed. We all know this. We've dealt with it in appeal and appeal and appeal. You simply cannot raise in an affidavit something flatly contradicting what has happened in this case. And any plain reading of that deposition comes to the conclusion that Mr. Mieterhofer was in no peril, in no danger. He may have been worried about getting in trouble by his boss for denting the truck, which didn't happen. But there's no peril, there's no danger, and it's not pled in the complaint. Let me just ask, was he asked in the deposition, did you feel like you were in any danger, or did that have anything to do with why you got out of the truck? Look, remember now, it's not pled in the complaint anyway. But he says, this is the question, and it's right in our appellate brief, at page 89 of the deposition. And were you or Brad injured at all in that occurrence? No. Okay, so that happens and it comes to rest, and there is this minor trend of error, but everybody's okay at that point. Answer correct. Well, I mean, you can answer those questions that way, and the car would be on fire, and you don't know what, you know what I mean. You don't understand what I'm saying. It wasn't on fire. Well, I know. And there's no allegation it's on fire, and there's no allegation about a gas tank exploding, and there's no allegation about any of this. I understand, but when he's asked in his deposition, I mean, you're talking about the affidavit being contradictory. Was he ever asked about why he got out of the truck, and did it have anything to do with any concern about danger? Why he got out of the truck was to – and the deposition bears this out. At the time it came to rest, they were afraid if they moved the truck anymore, they might make things worse, that the best thing to do might be to get help and pull the truck off the train as opposed to trying to drive it off the train, where it would cause more damage. So what they were doing at the time, and why he did it, while he was talking on his cell phone, he was getting out to check if anything had been damaged to see how they were going to get this truck off the train. But he testifies that it's a blue flag. He testifies that means no locomotive is coming in and no other cars are going to be moved. Then we get an affidavit that says they are going to be moved. It's not pledged in the complaint anyway, so it's much ado about nothing. I mean, you think about the logic of this for a second. If the plaintiff could recover in this particular case, under this theory, where this minor fender bender results in no injury, but yet that's the entire basis for negligence and causation in the case. Now, the railroads and every other employer are faced with this issue. You have a minor fender bender. Nobody's hurt, everybody's fine, everybody's sitting there. And this cell phone call is made, the same call that Mr. Heater often makes. Now what does the employer, the railroad, the premises want to do? They say, don't move, sit tight, we're going to come wrap you in bubble wrap, because anything that happens after this point, we're responsible for. If you jump out 100 feet on the ground and land, we're responsible for it. If you're talking on a cell phone and you're not looking, we're responsible for it. If a lightning bolt comes down as you're getting down in a hitch, we're responsible for it. It's the fallacy of the argument, this post hoc, ergo proctor hoc, this Latin nonsense, but it means something. And that is why we get back to the point where regardless of what Roger says, regardless of what McBride says, and they can expand causation to a scintilla, chicken's broth, whatever they want to call it in some of those cases, this is not causation. This is not a legally recognized concept of causation. And there's no ifs, ands, or buts about that. And when you take the logic of it, which is poor logic, as these cases say, and extend it out, you can see the absurdity. This case was a subject of complaint. It was a subject of depositions. It was a subject of interrogatories to now come in and suggest after the fact that Mr. Niederhofer was in some kind of peril, when it's not a political complaint, when it's not testified to anywhere, shows the position that the plaintiff is a creative lawyer, I give him credit, but that is not the way you give a new trial in this particular case. And it couldn't be any more clear. Does anyone have any questions? Thank you very much, Mr. Wright. Any rebuttals? The realist hyperbole ignores the record and the standard that this court is to apply to this case. The fact is that the plaintiff submitted a detailed affidavit prior to the hearing on the motion for summary judgment. Defendant did not move to strike that affidavit. It did not object to anything in that affidavit, as is a party's right. The rule is, of course, a circuit court can only consider evidence that is admissible. Defendant didn't raise any of that in the circuit court. And when you read that affidavit, you won't find anything in there about the plaintiff stating he was in fear for his life, that he thought he was going to burn up and catch fire. It's a very measured affidavit that states why he believed, for example, in paragraph 15, it sets forth the reasons why he believed he needed to exit the truck, including assessing whether there was any danger to himself and the driver, including whether leaving the truck in that position was a good idea or not. The whole issue about the complaint is a red herring. Again, a hyperbole, if you read the complaint, it has the allegations. When Mr. Reitz read one sentence of one paragraph, of course, he left out the next sentence that talks about the icy conditions creating an unsafe workplace. He left out the sentence that talks about the negligent actions resulting in the injuries. The complaint as a whole structure sets forth the boundaries of the case in which these set of facts fit. The issue is not what adjectives or adverbs I used in my reply brief. The issue for the circuit court was whether there was sufficient evidence for the jury to consider whether Mr. Niederhofer's response to the collision caused by the defendant's negligence was a normal response in the normal course of chain of events. Of course, the cell phone call he was making was in compliance with the railroad's rule to immediately report this collision to his supervisor. He wasn't talking to his wife or ordering flowers or anything like that. He was immediately responding to his supervisor by cell phone because the radios that he had been supplied in the truck did not work. They weren't synced to the railroad's other communications. That's the cell phone call that was being made, and it's all part of a natural chain of events resulting from the railroad's negligence, and the jury should have decided whether the negligence was a cause to any degree of his injuries. Thank you. Thank you. All right. Thank you both for your briefs and your arguments. We'll take this matter under advisement and issue our decision in due course.